United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAUOA HEAD, et al.,<br>Plaintiffs,<br>v.<br>LEXINGTON INSURANCE COMPANY, et al.,<br>Defendants. | Case No. 26-cv-01254-HSG<br>**ORDER GRANTING MOTION TO REMAND**<br>Re: Dkt. No. 30 |

Pending before the Court is Plaintiffs' motion to remand. Dkt. No. 30. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion to remand.

## I. BACKGROUND

Plaintiffs Rev. Tauoa Head and his children initially filed this insurance case in San Francisco Superior Court. Dkt. No. 1-2, Ex. A ("Compl."). Reverand Head worked for United Samoan Ministries, UCC, and Ekalesia Kalvaria Faapotopotoga Kerisiano UCC ("EKFK"), all nonprofit religious entities (collectively, "Church Defendants"). *See id.* at ¶¶ 9–10, 19. Plaintiffs allege that as part of Rev. Head's employment, he was required to drive to various locations. *See id.* at ¶ 19. His wife, Fuaae Head, would accompany him at times. *Id.* Accordingly, United Samoan and EKFK had purchased insurance policies, and Plaintiffs allege that Rev. Head, Fuaae Head, and their vehicle were insured by these policies. *See id.* at ¶¶ 6, 12, 18, 21, 28–29, 34.

In December 2020, Rev. Head was driving and his wife was a passenger in the car when they were hit from behind by an uninsured motorist. *Id.* at ¶ 21. Both were injured, and Fuaae Head died from her injuries a few months later. *Id.* Plaintiffs allege that they notified Lexington Insurance Company and Brotherhood Mutual Insurance Company ("Insurance Defendants") of the

accident and made a claim for uninsured motorist benefits under the policies. *Id.* at ¶ 22. However, Plaintiffs allege that the insurance companies wrongly denied coverage. *Id.* at ¶¶ 23–25.

Based on these allegations, Plaintiffs bring claims against the Insurance Defendants only for (1) breach of contract; and (2) violation of the implied covenant of good faith and fair dealing. *See id.* at ¶¶ 27–47. Plaintiffs also bring a claim against all Defendants, including Church Defendants, for (3) declaratory judgment. *Id.* at ¶¶ 48–54. Specifically, Plaintiffs allege that Insurance Defendants denied coverage, at least in part, by narrowing the scope of covered vehicles under the policies. *See id.* at ¶ 51. However, Plaintiffs contend that the California Insurance Code sets a minimum level of coverage for underinsured motorist policies, and that Insurance Defendants may not issue policies that do not meet these minimums. *See id.* at ¶¶ 48–50. Plaintiffs thus seek declaratory judgment that:

> A. The attempted limitation of uninsured/underinsured motorist coverage under the Policies to less than all vehicles insured for liability under the Policies is null, void, invalid, ineffective, unenforceable, and unlawful;
>
> B. Any and all attempted limitations of uninsured/underinsured motorist coverage to anything less than all vehicles insured for liability under the Policies, is stricken from the Policies.
>
> C. The scope of covered vehicles under the Policies for uninsured/underinsured motorist coverage is redefined as "any auto" owned, hired, or borrowed by Church Defendants, including vehicles rented and/or hired and/or borrowed and/or owned by Rev. Head; and,
>
> D. Defendants must accept coverage for Plaintiffs' uninsured motorist claim and pay all benefits owed.

*Id.* at ¶ 53.

## II. MOTION TO REMAND

Insurance Defendants removed the case to federal court in February 2026 based on diversity jurisdiction. Dkt. No. 1. In their notice of removal, Insurance Defendants recognized that Plaintiffs are citizens of California, and Church Defendants' principal place of business is in California. *See id.* at 6 (citing Compl. at ¶¶ 3, 9–10). Ordinarily this would defeat diversity

jurisdiction. To properly invoke diversity jurisdiction, the defendant bears the burden of proving that the parties in the action are completely diverse, meaning that "each plaintiff [is] of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). However, Defendants argue that the Court should not consider the citizenship of Church Defendants for purposes of diversity jurisdiction, or in the alternative that Church Defendants should be "realigned" as plaintiffs in this case. Dkt. No. 1 at 7–10. Plaintiffs contend that removal was improper and move to remand the case to state court. Dkt. No. 30.

**A. Legal Standard**

A defendant may remove a state court action to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C § 1441; *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("A defendant may remove to federal district court an action first brought in state court when the district court would have original jurisdiction."). Diversity jurisdiction exists where the matter in controversy exceeds $75,000 and the dispute is between citizens of different states. 28 U.S.C. § 1332(a). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000). On a motion to remand, federal courts must presume that a cause of action lies beyond its subject matter jurisdiction, *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009), and must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party bears the burden of establishing federal jurisdiction. *See id.* at 566–67.

**B. Discussion**

**i. Nominal Parties & Fraudulent Joinder**

As an initial matter, Insurance Defendants argue that the Court should disregard Church Defendants' citizenship for purposes of diversity jurisdiction. *See generally* Dkt. Nos. 1, 34, 35.

Defendant Brotherhood first contends that Church Defendants are nominal parties to this case such that their citizenship should not be considered. *See* Dkt. No. 34 at 8–10. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of

real parties to the controversy." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004) (quotation omitted) (alteration in original). A nominal party is one that "ha[s] no interest in the action" and is "merely joined to perform [a] ministerial act . . . ." *See Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000); *see also Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1133 (9th Cir. 2002) (construing as nominal party a predecessor entity that had been dissolved and thus had no "personal stake in the outcome of th[e] case"). "The paradigmatic nominal defendant is a trustee, agent, or depositary . . . [who is] joined purely as a means of facilitating collection in an action to recover fraud proceeds." *S.E.C. v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (quotation omitted) (alterations in original). Defendant Brotherhood argues that Church Defendants do not have any personal stake in the outcome of this insurance action since Plaintiffs are not seeking to recover any money from them and Church Defendants themselves are not entitled to any benefits under the policies. *See* Dkt. No. 34 at 8–10.

Relatedly, Insurance Defendants argue that Church Defendants were fraudulently joined because Plaintiffs do not state a viable claim against them. *See* Dkt. No. 34 at 10–13; Dkt. No. 35 at 7–13. "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare*, 889 F.3d at 548. There are two ways to establish fraudulent joinder:

> (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.

*Id.* (quotation omitted). In the absence of actual fraud, therefore, a defendant must "show[] that an individual joined in the action cannot be liable on any theory." *Id.* However, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (emphasis in original) (quotation omitted). In other words, joinder is only fraudulent if it is "obvious according to the settled rules of the state that [the plaintiff] has failed to state a claim against [the defendant]." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quotation omitted). There is a "general presumption against fraudulent joinder,"

United States District Court
Northern District of California

and defendants who assert that a party is fraudulently joined carry a "heavy burden," *Hunter*, 582 F.3d at 1046, particularly since "[f]raudulent joinder must be proven by clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Defendants' arguments turn on the nature of Plaintiffs' claim against Church Defendants and Church Defendants' resulting stake in the outcome of this case. Here, Plaintiffs have alleged three causes of action: breach of contract, bad faith, and declaratory relief. *See* Compl. at ¶¶ 27–54. The breach of contract and bad faith claims are only alleged against Insurance Defendants. *See id.* at ¶¶ 27–47. The declaratory relief claim is alleged against all Defendants, including Church Defendants. *See id.* at ¶¶ 48–54.

Plaintiffs explicitly acknowledge that Church Defendants "have no entitlement" to benefits under the policies and also "face no contribution claim." *See* Dkt. No. 31 at 13–14; Dkt. No. 36 at 4. Nevertheless, Plaintiffs suggest that Church Defendants are not fraudulently joined because Plaintiffs seek forward-looking "reformation of the policies at issue." *See* Dkt. No. 31 at 1. Understanding Plaintiffs' argument requires a brief discussion of the claims—and the policy language—at issue here.

The crux of Plaintiffs' case is that Insurance Defendants have impermissibly narrowed the scope of coverage for uninsured and underinsured motorists under the policies. Plaintiffs contend that as written, the policies provide liability coverage up to $1 million for bodily injury or property damage arising out of the use of "non-owned autos" and $100,000 for physical damage for "hired autos and owned trailers."[1] *See* Dkt. No. 12-1 at 34 ("Endorsement No. 2"). The provision that provides $100,000 for "physical damage" also explicitly includes coverage for "'property damage' arising out of any peril, including . . . the 'hired auto' being struck by an uninsured motorist, underinsured motorist, or hit and run driver." *Id.* at 35. Plaintiffs urge that because the policies include some automobile liability coverage for some vehicles insured under the policies, they

[1] "Non-owned autos" include "any 'auto' you do not own, lease, hire, rent or borrow which is used in connection with your business," and "includes 'autos' owned by your 'employees.'" *See* Dkt. No. 12-1 at 36. "Hired autos" include "any 'auto' that you lease, hire, rent or borrow for less than 180 days," but excludes "'autos owned by your 'employees.'" *See id.* And "owned trailers" include "a trailer owned by you licensed for use on public roads, but only while used in connection with your business." *Id.*

United States District Court
Northern District of California

necessarily must include uninsured and underinsured motorist benefits for all vehicles under the policies, including the one driven by Rev. Head. *See* Compl. at ¶¶ 30–33; *see also* Dkt. No. 19 at 3–9. In short, Plaintiffs contend "that uninsured/underinsured motorist coverage is an 'all or nothing' requirement" under California law: "an insurance policy must provide uninsured/underinsured motorist coverage for all of the vehicles that have liability coverage under that policy, or for no vehicles at all." *See* Compl. at ¶ 32 (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700 (2001), *as modified* (Nov. 20, 2001)).

Thus, in addition to seeking benefits under the policies, Plaintiffs also ask the Court—as part of the declaratory relief claim—to (1) strike from the policies "[a]ny and all attempted limitations of uninsured/underinsured motorist coverage to anything less than all vehicles insured for liability under the Policies" and (2) "redefine[]" the scope of "covered vehicles" in the policies to include "'any auto' owned, hired, or borrowed by Church Defendants, including vehicles rented and/or hired and/or borrowed and/or owned by Rev. Head." *See* Compl. at ¶ 53. In short, Plaintiffs urge that they are seeking prospective relief that would permanently modify (and expand) the terms of the policies to which Church Defendants are parties. Dkt. No. 31 at 1, 4, 8–12. Plaintiffs broadly state that "[a] judicial decree that strikes or reforms language in a contract to which they are a party will necessarily affect them." *See id.* at 12.

Insurance Defendants, for their part, argue that there is no "actual controversy" involving Church Defendants, citing Plaintiffs' own acknowledgment that they are not seeking any contribution from them. *See, e.g.*, Dkt. No. 34 at 10–12; Dkt. No. 35 at 7–11. But the parties largely talk past each other, and Defendants quickly dismiss Plaintiffs' "reformation" argument with little analysis. Notably, the cases that Defendants cite do not involve any declaratory relief claims for the "reformation" of insurance contracts. *See, e.g.*, *Lakatos v. RLI Corp.*, 736 F. Supp. 3d 796, 802 (C.D. Cal. 2024) (finding primary insurer fraudulently joined where plaintiff sought coverage under separate, excess policy that incorporated terms and conditions from primary policy); *Cesil v. Liberty Mut. Fire Ins. Co.*, No. 2:20-CV-00008-M, 2020 WL 2128636, at *2–3 (E.D.N.C. May 5, 2020) (rejecting argument that employer policyholder had stake in lawsuit, and was not nominal party, based on possibility that insurance premiums would change as result of

lawsuit); *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 258–62 (4th Cir. 2013) (finding insured was nominal party where case was "pure contribution action" between insurance companies and underling lawsuit about insured's liability had been settled).

Defendants urge that Plaintiffs' declaratory relief claim only seeks "backward-looking determinations" that Insurance Defendants should have accepted their uninsured motorist claims. *See* Dkt. No. 35 at 9–10. And the declaratory relief claim does appear to do so, at least in part. Plaintiffs seek, for example, a declaratory judgment that "Defendants must accept coverage for Plaintiffs' uninsured motorist claim and pay all benefits owed." *See* Compl. at ¶ 53. But Plaintiffs assert that they are also seeking to redefine the terms of the policies moving forward. *See id.* (seeking to "strike" provisions of the policies and "redefin[e]" terms). Plaintiffs at least suggest that the policies—and the parties' contractual relationship—continue. Even if Plaintiffs' declaratory relief claim is not adequately pled in the operative complaint, "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. Even "[i]f a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there." *Id.* at 550. Instead, the Court "must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* Insurance Defendants' own cases at least leave open the possibility that even backward-looking declaratory relief claims may be amended and cured. *See DXC Tech. Co. v. Gen Digital, Inc.*, No. 23-CV-04818-EJD, 2024 WL 2882565, at *7 (N.D. Cal. June 7, 2024).

The Court acknowledges the somewhat strained nature of Plaintiffs' theory against the Church Defendants and the odd posture of this case.[2] However, Defendants bear the burden of establishing federal jurisdiction and any doubts are resolved in favor of remand. The Court cannot

[2] Plaintiffs apparently have not served Church Defendants, despite the age of this case. Thus, Church Defendants did not consent to removal and have not weighed in here at all. *Cf.* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). Setting aside the motion to remand, the Court would ordinarily issue an order to show cause why Church Defendants should not be dismissed for failure to serve them as required by Federal Rule of Civil Procedure 4(m). *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

say on this record that Church Defendants have no stake in the lawsuit or that Plaintiffs could not possibly state a claim against them.

**ii. Realignment**

Alternatively, Insurance Defendants argue that the Court should "realign" Church Defendants as Plaintiffs. *See* Dkt. No. 34 at 13–14; Dkt. No. 35 at 13–14. It is the duty of the federal courts "to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941) (quotation omitted). To determine the parties' sides, courts must look to the "principal purpose of the suit" and the "primary and controlling matter in dispute," *id.* (quotation omitted), and "align for jurisdictional purposes those parties whose interests coincide respecting the primary matter in dispute," *Prudential Real Estate Affiliates v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000). Courts may realign parties "according to their interests" when those interests "involve[] substantial legal rights or detriments flowing from the resolution of the primary matter in dispute." *Id.* at 874.

The Court declines to exercise its discretion to realign Church Defendants under the circumstances. The parties appear to agree that the primary matter in dispute here is whether the Insurance Defendants owe Plaintiffs benefits under the policies. It is not clear on this record, however, what role Church Defendants would play in the litigation were it to proceed here or what their position would be as to this primary dispute. This appears to be an unusual fact pattern as neither side has cited a case where realignment was granted under similar circumstances. In the absence of more on point authority, the Court cannot say that realignment is appropriate here.

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

## III. CONCLUSION

The Court **GRANTS** the motion to remand.[3] Dkt. No. 30. The Clerk is directed to remand the case to the Superior Court of California for the County of San Francisco and close the file.

**IT IS SO ORDERED.**

Dated: 7/28/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

[3] Because the Court grants Plaintiffs' motion to remand, it does not consider either of the pending motions to dismiss. Dkt. Nos. 11, 22.